UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MASSACHUSETTS

| | |
|---|---|
| EMBER RUSSELL, | : |
| Plaintiff, | : |
| v. | : C.A. NO. 04-30031-KPN |
| LONG VIEW RECREATIONAL VEHICLES, INC. AND LONG VIEW RV SUPERSTORES, | : |
| Defendants. | : |

### DEFENDANTS' EMERGENCY MOTION TO QUASH SUBPEONA

Pursuant to Fed. R. Civ. P. 26(c), the defendants, Long View Recreational Vehicles, Inc. and Long View RV Superstores (collectively "Defendants"), file this Motion to Quash Subpoena to preclude the plaintiff, Ember Russell ("Plaintiff"), from taking the deposition of Defendants' attorney, Timothy Murphy ("Attorney Murphy"), who has represented Defendants in this action throughout the administrative proceedings at the Massachusetts Commission Against Discrimination and during this lawsuit, on February 25, 2005 at 1:00 p.m. As grounds for this motion, the testimony of Attorney Murphy is not crucial or even relevant to either the Plaintiff's case or the Defendants' defense and, respectfully, Defendants submit that the effort to take the deposition of Attorney Murphy is, in all likelihood, an inappropriate strategic move to compel Attorney Murphy and his firm to withdraw from representing Defendants in this matter pursuant to Mass.R.Prof.C. 1. 7 and 3.7.

### I. Background

Plaintiff began work as a receptionist on February 20, 2003. On June 13, 2003, she faxed a letter to Longview requesting sick leave because she was allegedly unable to work due to sexual harassment. Denise Chartier, Longview's comptroller, wrote Russell that same day that that she wanted to meet with Russell to investigate her complaint.

Plaintiff was interviewed about her sexual harassment complaint on July 9, 2003 by Attorney Murphy. Attorney Garrow was also present throughout the interview as was Ms. Chartier. As a result of the information provided by Plaintiff, Attorney Murphy interviewed nine other Longview employees on July 23, 2003. Ms. Chartier was present for all of these interviews. Based on the information garnered by the interviews, Longview determined that Plaintiff had not been sexually harassed and communicated that conclusion to Plaintiff on July 25, 2003. (See Ex. 1)

On July 8, 2003, Plaintiff filed a Charge of Discrimination with the Massachusetts Commission Against Discrimination ("MCAD") against Longview and George Leduc. In her Charge, Plaintiff asserted that her co-workers sexually harassed her and that Longview, specifically Leduc, did nothing about it. In response to the Charge, Longview and Leduc submitted to the MCAD a detailed summary of each and every witness interview, which it copied to Plaintiff. On or about October 13, 2003, Plaintiff requested that the Commission dismiss her Charge, which it did on October 17, 2003. She filed the instant action on February 13, 2003.[1]

During discovery, Defendants furnished Plaintiff with Attorney Murphy's notes of all the witness interviews conducted as a result of Plaintiff's complaint of

---

[1] On April 6, 2004 Plaintiff filed a second Charge of Discrimination with the MCAD against Longview and George Leduc alleging that she was retaliated against and constructively discharged. On or about May 6, 2004, Plaintiff requested that the Commission dismiss her Charge, which it did on May 11, 2004. Thereafter Plaintiff amended the instant Complaint to include claims of retaliation under state and federal law.

sexual harassment. Defendant's also furnished Plaintiff with a written summary of the investigation that Attorney Murphy prepared for Longview. (See Exhibits 2 and 3)

On January 31, 2005, Plaintiff served a deposition subpoena on Attorney Murphy for February 25, 2005. (See Ex. 4) Attorney Murphy did not file a motion to quash the subpoena at that time because the parties agreed to postpone the deposition as they had reached an agreement to mediate the matter on February 25, 2005. On February 11, 2005, the parties filed a joint motion to extend the February 28, 2005 deadline to April 1, 2005 in order to complete discovery in the event that mediation was unsuccessful. However the Court denied this motion. On February 22, 2005, Attorney Murphy received a re-notice of his deposition for February 25, 2005 at 1:00 p.m. (See Ex. 5; see generally, Murphy Aff. ¶¶ 6-10). Accordingly, this Motion followed.

## II. Discussion

### A. A Party May Not Depose Opposing Counsel Absent Compelling Justification.

Courts in Massachusetts and elsewhere have been appropriately hesitant to allow one party to seek testimony from opposing counsel as a tactical move to create ambiguities regarding opposing counsel's right to continue his representation. See Serody v. Serody, 19 Mass. App. Ct. 411 (1985) (testimony from defense counsel only allowed where the areas of inquiry were more than peripheral to plaintiff's complaint, and defense counsel was intimately involved in events at issue); Borman v. Borman, 378 Mass. 775, 855-856 (1979) (court commented that the [disciplinary] code has been used increasingly as a catalog

3

of pretrial tactics...[but] needless disqualification...fosters a more dangerous disrespect for the legal process.); Gorovitz v. Planning Board of Nantucket, 394 Mass. 246, 250, n.7 ("Court resources are sorely taxed by the increasing use of disqualification motions as harassment and dilatory tactics").

Even when dealing with a serious criminal investigation into racketeering, such considerations led the Second Circuit Court of Appeals to impose upon the government strict requirements before issuing a grand jury subpoena to a defense lawyer when such testimony might have had the effect of precluding that attorney from subsequently representing the defendant. In re Grand Jury Subpoena, 759 F.2d 968 (2d Cir. 1985) Court, while recognizing the public interest in presenting all relevant information to the grand jury and the potential problems for law enforcement of restricting grand jury subpoenas, declared:

> "[U]nbridled use of the subpoena would potentially allow the Government, in this and future cases, to decide unilaterally that an attorney will not represent his client. Such a power of disqualification can undermine and debilitate our legal system by subjecting the criminal defense bar to the subservience of a governmental agent."

A party's attempt, by designating opposing counsel as a witness, to interfere with the opposing party's choice of counsel should be closely scrutinized to ensure that it is both necessary and proper. Such scrutiny would preclude one party from having de facto veto power over the counsel selected by her litigation adversary. Thus, even in civil cases, a party may not potentially disqualify opposing counsel and his entire firm by unilaterally compelling a deposition, thus altering the attorney's role from advocate to potential witness. Indeed, allowing a

party to use a subpoena as a mere strategic ploy would deprive a party of the right to choose its own counsel and cause financial hardship by requiring retention of substitute counsel. Siguel v. Allstate Life Ins. Co., 141 F.R.D. 393, 396 (D.Mass.,1992)

To avoid tactical removals, courts closely examine whether there is a bona fide for the attorney to testify. Conigliaro v. Horace Mann School, 1997 WL 189058 (S.D.N April 17, 1997)(While plaintiff conjectures that [Attorney] Hess might be able to descri employer's "policies and practices, she has provided no basis for believing that Hess uniquely capable of discussing this issue. To the extent Hess' testimony would be cumulative, it cannot serve as the basis for disqualification.) See Abdullah v. Sherida Square Press, Inc., 1995 WL 413171, at *1 (S.D.N.Y. July 10, 1995) See also, Unive Athletic Sales Co. v. American Gym Recreational & Athletic Equip. Corp., 546 F.2d 5 538-39 n. 21 (3d Cir.1976), cert. denied, 430 U.S. 984 (1977). The necessity standar requires more than mere speculation that counsel will be required to testify. Cf. Electr Laboratory Supply Co., Inc v. Motorola, 1990 WL 96202, at *2 (E.D.Pa., July 3, 1990) "Necessity" of testimony is determined by the significance of the matter to be attestec the weight of the testimony and the availability of other evidence. Forrest v. Par Pharmaceutical, Inc., 46 F.Supp.2d 244, *248 (S.D.N.Y.,1999)

In the instant case, the putative testimony of Attorney Murphy, who obviously was not a first hand witness to any alleged harassment, can not in any way establish whether the Plaintiff was or was not sexually harassed in the workplace, or whether Defendant LongView RV is liable for said harassment. Providing Plaintiff's counsel with the names of the witnesses interviewed by

Attorney Murphy and his hand-written notes of those interviews provides Plaintiff with the same opportunity to question, or even depose, any potential witnesses. In addition, as Ms. Chartier was present for each interview she would be available to be deposed as well as to the conduct of those interviews. In fact, Plaintiff has noticed Ms. Chartier's deposition. (See Exhibit 6). See Colonial Gas Co. v. Aetna Cas. & Sur. Co., 144 F.R.D. 610, 613 (D.Mass. 1991) (testimony of plaintiff's counsel may be extraneous insofar there are other individuals with sought after information). Even testimony that is highly relevant and highly useful may not be strictly necessary if it is merely cumulative to the testimony of others. Paramount Communications, Inc. v. Donaghy, 858 F.Supp. 391, 394 (S.D.N.Y.1994). The significance of the matter to be attested to, the weight of the testimony and the availability of other evidence determine the "necessity" of testimony. Forrest v. Par Pharmaceutical, Inc., 46 F.Supp.2d 244, *248 (S.D.N.Y.,1999). Attorney Murphy's testimony in this case would be hearsay and, in any event, cumulative. His testimony is neither relevant nor necessary, and should not be required.

In Rizzo v. Sears, Roebuck and Co., 127 F.R.D. 423 (D.Mass.,1989), the district court concluded that even where plaintiff's counsel actually had personal involvement in matters material to the case, his deposition was not necessary to achieve a fair resolution of this case because his testimony could only corroborate facts already in the possession of Sears. The present case is distinguishable from Rizzo in that Attorney Murphy has no personal involvement or knowledge of Plaintiff's underlying harassment claims and thus could only

6

corroborate what either Plaintiff knows already of could readily ascertain through others. In this way, this case represents an even stronger argument for holding that deposing Attorney Murphy is unnecessary to a fair resolution of Plaintiff's case.

### III. Conclusion

For the foregoing reasons, Defendants request that this Motion to Quash Subpoena be allowed.

Respectfully Submitted,

_____
Timothy Murphy
BBO # 556429
Counsel for Defendants
Skoler, Abbott & Presser, P.C.
One Monarch Place
Suite 2000
Springfield, MA 01144
Tel: (413) 737-4753

February 23, 2005

### CERTIFICATION PURSUANT TO LR 7.1(2)

I hereby certify that I attempted to confer with Attorney Garrow to resolve in good faith the issues implicated by this motion however, she was unavailable. I left a detailed voice message at 11:50 a.m. on February 23, 2005 but in light of the exigency of this situation I have filed this motion without having spoken to her today. I have previously indicated my intention to oppose any effort to depose me.

_____
Timothy Murphy

## CERTIFICATE OF SERVICE

I hereby certify that a true and accurate copy of the foregoing *Defendants' Emergency Motion To Quash Subpoena*, was served upon the attorney of record for each other party by electronic delivery on February 23, 2005.

_____
Timothy Murphy