# Exhibit 1

# Skoler, Abbott & Presser, P.C.
## Attorneys at Law

SUITE 2000
ONE MONARCH PLACE
SPRINGFIELD, MASSACHUSETTS 01144
(413) 737-4753 · FAX: (413) 787-1941

Worcester Office
Thirty Park Avenue
Worcester, Massachusetts 01605
(508) 757-5335

Boston Number
(617) 720-2012

Timothy F. Murphy

July 25, 2003

**VIA FACSIMILE AND U.S. MAIL**

Suzanne Garrow, Esq.
Heisler, Feldman & McCormick, P.C.
1145 Main Street, Suite 508
Springfield, MA   01103

Re:  Ember Russell
     -and-
     Longview Recreational Vehicles

Dear Attorney Garrow:

As you know, following your client's written allegation of sexual harassment on June 12, 2003, Longview promptly commenced an investigation into whether its policy forbidding sexual harassment had been violated.[1]  I write to inform you of the findings and conclusion of the investigation of your client's allegations of sexual harassment.

As part of this investigation, we interviewed your client on July 9, 2003 at your office and in your presence, as requested.  Thereafter we interviewed eight other individuals regarding your client's allegations.  Those interviews were recently completed.  After reviewing the information provided by all nine of the individuals interviewed[2], Longview has concluded that your client was not subjected to sexual harassment in violation of its sexual harassment policy.

Longview has a proven record of ensuring that its employees are not subjected to illegal discrimination or harassment.  Where appropriate, Longview has taken

---

[1]Longview's sexual harassment policy is modeled on the MCAD's sample policy and as such it incorporates the definitions and legal standards relating to sexual harassment as set forth in M.G.L. c. 151B.

[2]Your client does not allege, and we did not find, written or other tangible evidence relevant to her allegations.

EXCLUSIVE NORTH EAST REPRESENTATIVE OF
LABNET
A NATIONAL NETWORK OF MANAGEMENT, LABOR & EMPLOYMENT LAW FIRMS WITH AFFILIATE OFFICES:
ATLANTA · BALTIMORE · CHICAGO · CLEVELAND · COLUMBUS · DENVER · DETROIT · LAS VEGAS · LOS ANGELES
NEW YORK · NORTH AND SOUTH CAROLINA · ORLANDO · PORTLAND · SAN ANTONIO · SAN FRANCISCO · ST. LOUIS

Skoler, Abbott & Presser, P.C.
  Attorneys at Law

Suzanne Garrow, Esq.                    -2-                    July 25, 2003

disciplinary action against employees who were guilty of illegal discrimination or
harassment.  While disciplinary action is not appropriate in this case, Longview intends
to re-affirm its commitment to ensuring that its workplace is free of illegal discrimination
and harassment by conducting mandatory sexual harassment training for all employees
in the near future.

     Please be assured that should your client return to work at Longview, Longview
will closely monitor her work environment so that she is not subjected to illegal
harassment or retaliation.

     If you have any questions or concerns, please call me immediately.

                              Very truly yours,

                              Timothy F. Murphy

TFM:amm

F:\OFFICE DOCUMENTS\Data\Longview Recreational Vehicles\Russell, Ember\Garrow letter regarding investigation.wpd

# Exhibit 2

# Skoler, Abbott & Presser, P.C.
## Attorneys at Law

SUITE 2000
ONE MONARCH PLACE
SPRINGFIELD, MASSACHUSETTS 01144
(413) 737-4753 · FAX: (413) 787-1941

Worcester Office
Thirty Park Avenue
Worcester, Massachusetts 01605
(508) 757-5335

Timothy F. Murphy*

*also admitted in Connecticut

August 21, 2003

### *ATTORNEY-CLIENT PRIVILEGED - CONFIDENTIAL*

Denise Chartier, Comptroller
Long View RV SuperStores, Inc.
891 North King Street
Northampton, MA  01060

Re:  Ember Russell

Dear Dee:

I write to summarize the investigation into the sexual harassment allegations of Ember Russell.

As you know, we completed the investigation of Ms. Russell's sexual harassment allegations on July 23, 2003 following interviews with nine individuals, including Russell. On July 24, 2003, we reviewed the information obtained during the investigation. I opined that no illegal sexual harassment had occurred and recommended that no disciplinary action be taken. I also recommended formal sexual harassment training of Longview employees and managers. After discussing these recommendations, you adopted them on behalf of Longview. The next day I wrote to Attorney Garrow and informed her of same.

Nevertheless, I write to summarize the interviews. This summary is based on the notes I took during each of these interviews.

Interview with Ember Russell

As you know, we interviewed Ms. Russell on July 9, 2003 in her attorney's presence and at her attorney's office. At the outset, her attorney informed us that she had filed a charge of sexual harassment and gender discrimination with the MCAD.

Ms. Russell was hired as a receptionist in February 2003. Her duties included answering the telephone, greeting customers and data entry. She also maintained the "up list." She reported to George Leduc, the General Manager, and to Debbie Day, the Sales Manager, in Leduc's absence. Russell described her relationship with Leduc as "so-so" and indicated that she got along "fairly well" with Day.

EXCLUSIVE NEW ENGLAND REPRESENTATIVE OF
WORKLAW NETWORK
A NATIONAL NETWORK OF MANAGEMENT, LABOR & EMPLOYMENT LAW FIRMS

**Skoler, Abbott & Presser, P.C.**
Attorneys at Law                    2

Sales Manager, in Leduc's absence.  Russell described her relationship with Leduc as "so-so" and indicated that she got along "fairly well" with Day.

Russell worked at the front desk situated at the end of a short entryway from the door to the sales department.  A row of sales offices proceeded from her desk down a hall.  Longview utilizes an "up system" whereby sales personnel rotate - according to a list - to the front desk to await the next customer.  Russell kept the "up list" at the front desk and was responsible for ensuring that the "up system" functioned on a day-to-day basis.

Russell complained about jokes and remarks made to her and in her presence about herself, other women, and "racial" minorities (specifically Mexicans).  She complained about six particular incidents, which I will characterize and set forth below in bold print, along with information obtained from witness interviews relevant to that particular complaint.

1.    The "Bet"

**Russell told us that shortly after she started work at Longview, a co-worker, Tom Hadley, told her that another co-worker, Josh Fraser, had made a bet of $1,000.00 that he could "get" Russell.  Russell understood that by "get", Fraser meant "sleep with."  She was upset and offended by the "bet."**

**Russell confronted Fraser about what he said and told him that she was offended by it.  Fraser did not deny making the bet or apologize to her.  Instead he indicated he thought it was a private matter and he expressed anger that Hadley had told her about it.  Russell then claims to have talked to Leduc about it because of Fraser's reaction.  Leduc suggested to her that she not make a big deal about it. He also told her that he would take care of it but she does not know if Leduc ever spoke with Fraser about it.  Russell also said that Hadley was referred to as a "tattle-tale" by Debbie Day.**

George Leduc

When asked about this, Leduc denied any knowledge of the "bet" and denied any discussion with Russell or anyone else about it.

Josh Fraser

In response to my question about the "bet", Fraser suggested that while he felt that he could have slept with Russell if he wanted to - based on her behavior toward

Skoler, Abbott & Presser, P.C.
    Attorneys at Law                    3

him - and may have indicated that to others, he did not make any bet about it. He conceded that Russell spoke to him about the "bet" but that she did not seem offended at all and, in fact, told him that she did not want him to worry that she was upset by it and that she did not want it to be an issue between them.

Theresa Houghton

She indicated that Russell and Hadley started the "bet" thing at Fraser's expense.

## 2.    "Bitch" vs. "Bitchy" incident

**In June 2003, days before she went on leave, Josh asked her why she was so "bitchy?"  Present at the time were two new sales people, Matt and Brett, and Leduc.  Russell denied being bitchy and took offense to being referred to as a bitch.  Leduc joined in by explaining that there is a difference between being a bitch and being bitchy.  Someone then suggested that she was "pms-ing."**

**Russell resented that her mood was up for discussion and was offended because it became a joke at her expense.**

George Leduc

Leduc related that on that June day, Russell had been complaining about having a rotten day and Josh asked her "why are you so bitchy?".  She replied, "are you calling me a 'bitch?'"  Leduc, who had been walking down the hall, said to Russell that Fraser had not called her a bitch.  Leduc then tried to explain the difference between "bitch" and "bitchy" in an unsuccessful effort to calm Russell down and de-escalate the situation.  Leduc did try to explain that being referred to as bitchy is not as bad as being called a bitch.

Josh Fraser

Fraser basically corroborated the accounts of Russell and Leduc and added that Russell had been curt with him and others for some time and that had prompted him to ask her what was bothering her *i.e.*, "why so bitchy?"

Theresa Houghton

She indicated that Russell did mention to her that Fraser called her a "bitch" and that Leduc just explained that bitchy was different than bitch as opposed to telling

Skoler, Abbott & Presser, P.C.
Attorneys at Law                    4

Fraser he was wrong for what he did say. Houghton added that the two of them often joked with each other about being "bitchy."

### 3.    "Russell"

**Ms. Russell complained about a service technician named Russell who "followed her around like a puppy dog." She perceived Russell, who she described as "scruffy", to have a romantic interest in her. At times she had to tell Russell to leave the front desk and go back to work because she was "busy."**

**She complained to Leduc about it and Leduc thought it was funny. It soon became a big joke. Leduc told her that Russell was cute and that she should go out with him. Josh would tell Russell that she wanted to see him when she didn't. Frank Roberts told Russell that Ember is "in love or lust with you" even though he knew that Russell made her uncomfortable. This all just fueled the fire in Ms. Russell's view.**

Russell

Russell indicated that during the day, he would go by Ms. Russell's desk to get keys for a unit, to see Leduc, or the like. He did not go out of his way to speak to her but he would occasionally stop to talk with her. Sometimes she would ask his weekend plans. He invited her to parties but she never went. He denied any romantic interest in her because she was "his daughter's age." He was unaware of any teasing going on relating to him and Ms. Russell. Although he did recall Frank Roberts saying to him as he passed by Ms. Russell that he should watch out for that girl (Ember Russell) because she's single and has got the "hots for him." In addition, she never complained to Russell that he made her uncomfortable or paid too much attention to her.

Frank Roberts

Roberts did remember seeing Russell at the front desk with Ms. Russell. On those occasions she would engage Russell in small talk. Ms. Russell told Roberts that Russell gave her "the creeps." Roberts told Ms. Russell to tell Russell to go away then and don't talk to him. As she always seemed to be talking to Russell, Roberts joked that she must love Russell since she was reluctant to tell him to leave. Russell was standing there when he said it. Ms. Russell laughed and said "yeah, right" -- or something like it. It didn't seem like a big deal as he was just joking around.

Skoler, Abbott & Presser, P.C.
Attorneys at Law                          5

Josh Fraser

Ms. Russell told Fraser that she thought Russell was gross.  Fraser thought Russ "harmless" so he sometimes would call Russell over to Ms. Russell as a joke.

Theresa Houghton

Ms. Russell never complained to her that Russ made her feel uncomfortable. Russell spoke to her the same way that he did to Ms. Russell.

Houghton does recall being around when Russ was jokingly called over to talk with Ms. Russell.

George Leduc

Leduc "heard" that Russell had introduced himself to Ms. Russell and maybe asked her out.  Ms. Russell never complained to him about Russell and Leduc did not tell Ms. Russell that Russell was cute or that she should go out with him on a date.

Jason Doyle

Ms. Russell never complained to him about Russell although he did complain to him about other things.

4.    "Sean"

In March 2003, Ms. Russell was approached at a gas station after work by a man.  She assumed the man to be a Longview customer because he knew Russell worked at Longview.  The man "pumped her for personal information" which made her "uncomfortable."  Russell later learned that the man was named Sean and that he had recently been hired as a service technician at Longview. Russell told others at work how the encounter with Sean made her feel.

According to Russell, Sean told a co-worker, Mindy, that he liked Russell, and Mindy teased Russell by saying, "I know someone who likes you."  About two weeks later, Sean began to start coming up to Ms. Russell's desk.  One time he didn't leave the desk although Leduc was there and he didn't get the hint from her that he should leave.  Finally she told Sean that he had to leave.  Russell was upset with Leduc over this and asked him, "why didn't you do something?" because she had given Leduc a "help me" look -- but he did nothing.

Skoler, Abbott & Presser, P.C.
Attorneys at Law                                        6

In mid-March 2003, Sean gave his notice and Ms. Russell claims that Frank Roberts said to her that "I would have rented you out" to keep him. Ms. Russell was shocked and responded with "I can't believe you just said that." Roberts just replied: "Just Kidding".

## Frank Roberts

Roberts said that Russell told him of her feelings toward Sean on the same day Sean gave his notice. Roberts asked Russell if she wanted him to do something but Russell responded that Roberts should say nothing to Sean as he was quitting anyway.

Roberts, who manages the Connecticut store, didn't know Sean before he met him for the first time that same morning.

## George Leduc

Leduc heard her tell the gas station story and declare how Sean gave her the "creeps". Leduc did not know who Sean was at the time. Leduc recalls that one time he saw Sean at Russell's desk but that he didn't recognize Sean as an employee. Leduc asked "what's going on? and then Sean left .

## Wayne Danko

Danko saw Sean chit-chatting once with Russell at her desk. To Danko it seemed innocent. Danko remembered Russell mentioning that she felt uncomfortable around Sean and that she didn't like him. He also heard Russell relate the gas station story.

## Jason Doyle

Doyle remembers that Frank Roberts said to Russell jokingly (about Sean) words to the effect that: if I knew he liked you, I would have set you up. Doyle thought the remark inappropriate.

5.    Racial/ethnic jokes

Russell told us that racial jokes were commonplace. She indicated that she asked her co-workers not to continue to make racial jokes but they persisted. Russell alleged that Debbie Day participated in racial jokes. Russell recounted

**Skoler, Abbott & Presser, P.C.**
Attorneys at Law                    7

one occasion in which Wayne & Debbie were discussing a long trip made when one said to the other that he/she had hit some Mexicans and the other laughed and replied, essentially, what good are they anyway. Russell could not recall any other specifics of Debbie's racial "remarks". She did indicate that the racial remarks often were made early in the morning before it was busy, but she also said that their remarks were often made in front of many people including customers. She provided no specifics.

<u>George Leduc</u>

Leduc could not recall overhearing any racial or ethnic jokes in the workplace. He conceded, however, that people tend to "scatter" when he approaches the front desk or conversations tend to come to an abrupt halt when he approaches.

<u>Josh Fraser</u>

Fraser indicated that there probably have been ethnic or racial jokes told in the workplace. He provided no further details. Fraser never heard Debbie Day make racial jokes/remarks.

<u>Wayne Danko</u>

Danko revealed that jokes are common and that they sometimes included profanity but he did not indicate that they were directed at any particular racial or ethnic group.

<u>Jason Doyle</u>

Doyle could not recall hearing any racial or ethnic jokes at work. He was hired in February 2003 - a few weeks before Ms. Russell.

<u>Debbie Day</u>

Contrary to Ms. Russell's allegations, Ms. Day told us that she is unaware of anyone making racial or ethnic jokes in the workplace.

6.    **Remarks of Josh & Wayne**

Russell alleged that Josh and Wayne would sometimes make remarks about the physical appearance of female customers. She would overhear these

Skoler, Abbott & Presser, P.C.
Attorneys at Law                    8

remarks as they were speaking to each other. **Frequently the remarks would relate to the size of the women or the size of their breasts. They also commented about how the women were dressed or that they would like to have sex with the woman. She estimated that these remarks would sometimes occur 5 or 6 times a day depending on how busy they were. She claims to have asked them to stop, almost daily, to no avail.**

**Russell also alleges that Josh and Wayne would discuss, within earshot of her, their sexual exploits after every weekend.**

**Russell contends that she told Leduc about it and while he agreed that such remarks were inappropriate, he recommended only that she tell them to leave the front desk. Russell told Leduc that she tried it but it didn't work and that they just ignored her because "I'm not the boss." Leduc told her that it was her responsibility to see that sales people not congregate at the front desk.**

<u>George Leduc</u>

Leduc insists that Russell never complained about remarks Josh and Wayne made about women or about their sexual experiences.

<u>Josh Fraser</u>

Fraser admitted that once in a while he and Wayne talked about women but he believes it unlikely that Russell could have heard these conversations. He also denied any talk about his sexual conquests.

<u>Wayne Danko</u>

Danko admits that he occasionally remarked on the appearance of women but that these remarks were not sexual or demeaning.

<u>Theresa Houghton</u>

Houghton disclosed that she had heard comments about how fat customers were but never any comments that were sexually explicit.

**Skoler, Abbott & Presser, P.C.**
Attorneys at Law                                    9

<u>Jason Doyle</u>

Doyle stated that sales staff sometimes made mention of physical appearances of customers. He also added that he had heard Russell and Houghton discuss how "hot" male customers and visitors were. He did not provide any further detail.

**Miscellaneous**

**Russell made a point to tell us that she was reluctant to complain at first and that she is not hypersensitive. By March, however, she began to complain to Leduc about the various incidents set forth above. She believes that the more she complained the worse she was treated. As time passed, she felt she couldn't talk to Leduc. By May 2003, Russell realized that complaints to Leduc were ineffective. She told Debbie about Leduc's unresponsiveness but she didn't do anything about either problem with George.**

**As of early June 2003, Russell was feeling sick, frustrated, disgusted, upset, nervous, and stressed out because of her hostile work environment and she didn't think there was anyone else that she could talk to about it.**

**Russell indicated that some sort of disciplinary action should be taken against those responsible for her hostile work environment.**

<u>George Leduc</u>

Leduc stressed that Russell never formally complained to him about feeling sexually harassed. When Russell started work he explained to her what salespeople are like, that she should only talk work with sales guys, and that she should not allow sales people to congregate at her desk.

In response to a complaint from you about Russell's low rider pants and low cut tops during her first month on the job, Leduc spoke to Russell. Russell was indignant that Leduc would attempt to tell her how to dress and she was very defensive. Russell then dressed more conservatively for a while but reverted back to her inappropriate dress.

Leduc issued a disciplinary warning to Russell -- a short time before she leveled her sexual harassment allegations -- over her requests for time off. Russell became emotionally upset when Leduc and Day met with her and issued the warning. Toward the end of the meeting Leduc asked Russell how everything else was going? She said

**Skoler, Abbott & Presser, P.C.**
Attorneys at Law                    10

fine. He asked her if she felt there were problems. Russell responded that there were no problems between the three of them but other employees were stressing her out.

### Josh Fraser

Fraser found Russell to be forward and flirtatious with him and Jason Doyle. She frequently asked him for her "daily hug". She dressed provocatively and purposely showed her cleavage, showed him her belly button ring at least four or five times; suggested that they have sex in the "endeavor"; that he have her down to his house, and referred to him as "sweet and low".

Fraser conceded that he played along with her. He also admitted that Leduc told him and others to spend less time at the "up" desk. Fraser admitted that he did hang out there "more than I should have."

### Wayne Danko

Danko said that Russell did dress provocatively at first and that she talked a lot about needing sex a lot and that her boyfriend was good in bed and that was why she liked him. She also complained that her boyfriend would not "go down on her", *i.e.*, perform oral sex on her.

Danko never noticed Russ "stalking" Ms. Russell. Ms. Russell asked Danko to take her golfing sometime.

### Theresa Houghton

Houghton states that she and Russell were good friends and socialized on occasion together. Houghton has concluded that Russell "twists things" and is generally an <u>untruthful</u> person. She feels that as soon as Russell started talking about college, all of a sudden people were harassing her. Two weeks after she went to an appointment at HCC, she began talking of going to the labor board because she thought she was being harassed.

Houghton saw Russell flirting with Jason and Josh. She wore inappropriate low rider pants to work and egged Tom Hadley on to feel the strap of the thong underwear she was wearing that was exposed by her low-cut pants.

Russell had a belly button ring that she often showed to others. She also brought pictures of herself in the bathtub to work, but Houghton is not sure if the guys saw these.

**Skoler, Abbott & Presser, P.C.**
Attorneys at Law                    11

Russell did not have a "just business" attitude.  She talked about personal matters including:

–    a wedding dress;
–    Jason Doyle;
–    her family problems;
–    her mom's passing;
–    her medical issues;
–    arguments with her boyfriend; and
–    a lack of sex from lack of time together with her boyfriend.

Houghton found Russell to be moody - oversensitive - easily offended - would pout about it until it was a big problem.  Russell also had "gripes over nothing."

In her own experience, Houghton found Leduc responsive.  She had no problem with him.   Houghton offered to go with Russell to talk to Fran or Leduc about her allegations but Russell declined.  Russell didn't want to talk to Dee Chartier about her allegations either.  Houghton repeatedly urged her to resolve "problems" by talking to management about it.

Houghton believes that she has had no contact with Russell since she left because she told Russell she was not doing the right thing by making allegations of sexual harassment.

Jason Doyle

Doyle thought Russell nice, well-liked, and personable.  The two had a friendly, working relationship.  They talked on the phone outside work but did not socialize outside work.

Russell never complained to Doyle about Russ, Josh, Wayne or Debbie.  She complained to Doyle once about Leduc who she claimed had yelled at her.

**Skoler, Abbott & Presser, P.C.**
Attorneys at Law                    12

<u>Debbie Day</u>

Day said that while Russell complained about many things to her, she never complained about sexual harassment or about Russ. Day said that she also had no knowledge of the "bet" or "Sean" incidents.

Russell became "very emotional" when the disciplinary write-up was issued because she thought it bogus. At the conclusion of that meeting, however, Russell said that she had no problems with Day or Leduc.

Day also indicated that Russell wore tight fitting clothing to work. Day observed Russell often laughing and joking with co-workers.

Very truly yours,

Timothy F. Murphy

TFM:sjg

F:\OFFICE DOCUMENTS\Data\Longview Recreational Vehicles\Russell, Ember\Chartier letter investigation summary1.doc

# Exhibit 3



Debbie Day — Fairly nice!!

They progressed couldn't talk to GB

# of France — talks about IQ, women, race

front desk —> Where FL worked

complained more - treated badly by GB ~ dish 3

Wayne

numerous times - 1 hour - 6 hour

about me

G desk — customers

— don't appreciate it — no one

—

— when I told John what Josh had said or "rattle rattle" per Debbie

— George suggested not making a big deal about it

— Told GL of Josh's reaction — GL said he will handle it — 4 - not sure if he talked to Josh

6/03  2 new people: Matt & Brette sales - G
front desk
Josh & George too

ER — Josh —> "why so bitchy?"
Matt burn Josh
Crabby

George moved in ... you put her in the mud
— my [?] Nico @ ERC exposed
— pissing

Why is my word gp for discussions



→ I just hope the off —

Same sny — long-standing problem.

Russell - Gilhard around Peppa data — filters st

Told George — not think it funny

Russell-scruffy — romantic interest in her ~ small talk

Russell: to have — busy... go back to work by Jill

Scott rel Murph
something going out
Sue @ work
—no interest in ?? @ work

Josh — Ember wants to see you...

EL — Oh you dont
— cute... you wll go out with him
→ Scott by Murph



2wks — didn't have disk although he spoke w/ George was sure
— didn't get the hint
— finally told Sean you have to leave

Eh → Joe — Why didn't you bring something

— Gave "hint by look" — but Geo did w/ my hat
we were arguing what Geo/Sean was doing
= No need to be m that city office building (E/C side)

hgt of Ben True

Works @ CT store

Frank Roberts (son) @ front desk w/ Naomi D.? nothing

→ mechanic appraiser (Sean) — ER: Sharp → out
I had complained to Geo about = FR reprimanded
he
= —

FD — — I would have really you out to keep him



- size of breasts, ...
- ~ $120
- Name → Sales "same thing" →
- # Overheard plans
- how they were dressed
- "..."
- "do -v-"
- nice about it
- no comments about mate customers
- Told them to stop it almost daily
- say by a any diff
- really is Pro
- MA supposed to have 2 salespeople at
- (front but happened often — 30 secs)
- sign down
- fresh? Name did honor request
- Told 6h MA appropriate — I agree



[1/30]   sat 9/11/11 , 9/11/11 , ...

Wayne   Sexual exploits

After every weekend

Wayne: Came into drunk - slurring &...

Wayne — When

GL could corroborate drinking.

2x   Told Debbie ... fel ... feel uncomfortable w/ Wayne
— miserable, mean, rude (after drinking)

GL: laugh, joined in ... bitch v. bitchy

→ overreacts, too sensitive

takes a lot to upset me, Last story support myself



— Debbie said nothing so ER didn't think she would do anything

← didn't think there was anyone else they would talk to you

↖ Witnesses: other sales people not otherwise named

— Went tell me charm

— End, frustrated, disgusted

↙ hostile

— upset me - nervous, but some stress in job

— managed to get work done

Need to talk to Nissan — Eh } lawyer "harassing" him

7/28/03 Thresa Houghton Sales (call) 1/03

Were good friends — socialized on occasion

- diffrint

- crush on dream — beading him on — tellig vs another story
- engagement

- flirting —

- she started whole bit thing

- twists thgs — untruthful

- not cool — what saying about

- nvr told her

- "God dam" — not offended by everythg else

- light flirty → Russ (not one) — made her feel uncomfortable —
  Russ i said same thing to Thresa

- as soon as college talk — ~~people~~ people harass her —
  lift

- appt to chk out HCC — 1-2 wks later — go to labor board —
  I think I am being harassed — annoyi her — Gd jdash
  (bcd) incident

7/23/03  <u>Interview w/ Frank Roberts</u>

"Sean" allegation

R - want me to say something
R - say nothing to him - he is quitting anyway

R - if you want the stalkers

    Sean: not regarded as good - Frank didn't know him - met that morning for 1st time

- him CT division - oversee entire operations - since 1994

- She knew if was quitting at or before time that Frank learned of it - told by Sean.

Not a chit-chatter

knew Sean in meeting - ER brought up the incident

Frank comes to Hatfield - 1 x per week - often hears often now - but 3x a week from doing sales training

Got along well w/ - thought she was very good
    - excellent w/ phone
    - did job well
    - talked w/ Channel 40 - got a plug

Russell gives me the creeps — a month before quit

FR — tell him to go away then (you are always talking to him)
      — dont talk to him
    — you must love Russell if you dont want to tell him to
    — ER laughed — "yeah, right" — or something like it
Probably 1/2 sales team

Russell at desk a lot w/ ER

Now saw her out in shop talking w/ people

Always so nice to everyone

    — did not seem to be overly sensitive

    — dosh/Wayne · good at sales — not regular
      —> everyone likes dosh
      —> seemed like friends

Russell — she would engage him in small talk

Russell — standing there when FR said she must love you

FR — didn't seem like a big deal
    — joking around

7/23/03  Iview w/ George Leduc :

Josh incident: no idea — bet $1,000

Tom Hadley — witness for ER — rumors
⮑ left on "not best of terms" — quit

8/03  "bitchy"

- complaining about attendance
- didn't complain

Josh ⟹ why are so so bitchy
ER ⟹ calling me a "bitch"
GL ⟹ (walking down hall) he did not call you a bitch
ER ⟹ I had a rough day
GL ⟹ difference between "bitch" and "bitchy"

A couple of times — not feeling well — sent home

Nw formally complained to me

GL — explained at outset : what salespeople are like; be selective;
only talk work with sales guys

- Don't allow congregation at desk (past problem)

1st 3 weeks (ER) harry problem w/ tape — getting sales people
to respond — CSR, etc
- then all of a sudden — complaints stopped

<u>Dress code</u>:

- low cut pants
- low cut tops
- Dee made a comment to GL about dress
- she blew a gasket - can't tell me how to dress (term)
- 1st mo. on job
- got very defensive
- tone down - but didn't last

CSI forms: GL: your job to make sales guys complete forms

ER came to sales meeting to reinforce

3/03 { - fill out forms
       - respect for ER/im
       - don't congregate at desk

She never complained again - until write-up for time off incident (heard rumors of S.H. claim). Sunday A.M. mtg w/ Debbie present - "can't believe Carol would say that. crying... too much to take... I was trying to help Carol"

GL - How is everything out there going?
ER - Fine
GL - CSI / log sheets?
ER -
GL - Problems w/ me and Debbie
ER - Not you but others (stress me out)
ER - Don't want to be ostracized ... they thought I was

a tattletale... so I don't bother

GL: If you don't come to me/vc I can't help you

3 days before she "quit"

Physically documented — write-up for it in file

GL dines syng ER doesn't like me anyway — but people tell
GL that she didn't like GL

Russell

—"heard" that Russell introduced self maybe asked her

Ember now complained to GL about Russell

GL did not tell ~~Russell~~ Ed Russell cute... go out w/ him

"Sean" — met at gas station — heard her tell story — gives
me the "creeps" — not sure if still working here
at time —GL "Sean who"?

I time Sean at desk — only employed weeks — didn't recognize Sean
's employee
whats going on? — business related? Then Sean left —
only time GL saw him at desk

Racial jokes — not common — not overheard by GL — people scatter when GL walks up to desk — conversations came to quick halt

ER nvr complained about remarks about women

Pls make them leave — ~~stop~~ I will get them out of there

"Its your responsibility to make people leave desk

Patchy — trying to de-escalate situation = Ed overreacted

_____

Since ER gone: definitely working both sides working against middle

— c

— talked about her personal life
— Theresa — confidant

— didnt discuss personal issues w/ GL

GL — "issues", "unstable"

7/23/08   Interview  Josh Fraser

2½ - Sales — did not know Eth

    Good @ beginning — not good at end — turned 2 faces —

Overnight attitude changed — "sexually harassing" rumors

     - no contact
     - stopped associating w/ her
     - no ammunition

- Theresa told him about SH suit rumors

- with 1-2 wks of Eth

- work long days - talk w/ each other

- up system - good personality - snappy w/ employees

 - stopped waiting at front desk

- flirtatious
   - Jason: has a crush on me - stand close to me - talk to me -
Jason gets call - talk to my lawyer - said same thing to
Jason about Josh —

    - other gys said Eth loves sex
    - flirtatious
    - whines my daily life - hug me a few times

- purposely show cleavage
- have me down your house — no I have a girlfriend
- "short and low" nickname
- play along w/ it (Josh)
- such a playa
- once and a while talk to Wayne about women — couldn't have heard it — rare

---

Bitch v. Bitchy

"snappy stings"

Stop being bitchy

ER went off

ER told Col that JF called her a bitch

Difference

Took real offense — not affected by Col's explanation

Unstable → any

Stay away from her afterward

Happy go — smile

She thinks everyone that talks to her is hitting on her.

Russell is gross — "Russ come on over" — harmless

---

If I wanted to I could — felt like she wanted me —

her sig — get Josh to like her and then dog me (through

Thresa) — she confronted Josh about it — I don't

mind — I don't care — don't worry — put it past us

Did not hear that ER upset by this

Ethnic jokes — probably incl. blacks

---

"Scary" — just heard this other day : gas station —

thought stalking her

ER friendly Wayne, Thresa, Jason

— no socializing outside of work —> Thresa went out

w/ her Patric

(22 you)

Tom Yndley / Theresa :

↳ Friends    6/9 - incident in parking lot

Did neither Debbie make racial jokes/remarks

3-5 x during work @ up desk (5 min - 60 min)
↳ depend on how busy

Not aware of EB's issue(s) w/ Wayne

Good on surface — relationship w/ GL

↳ aware of send home for clothes

Dressed provocatively — not business

Show belly button ring at times — 4-5 times (sum for self)

Befriend away alot — lives at boyfriend's mothers house while
he was at school

90% of her talk not business

- ask to stay up
- daily hug in front of Jason
- 2 way conversations - does not carry conversation

Wynn is friendly w/ Josh — no talk of sexual conquests

Wynn used to drink alot

Complained to Carol

→ Carol has tape of her crying

→ seemed to be oversensitive and emotional too

→ mother passed away, bad relationship w/ father — afraid to move out — did so while he was out

→ "unstable" — a lot of issues

Go out to the Endeavor — "sex" — ER said

GL has told JF & others to spend less time at "up" desk. — did hang out up there — more than I should have

7/23/03  (I-vew w/ Russell)

— Tech → 15-16 years

Did not know ER before

For the little I saw — socially friendly — didn't say much

During day would go to EA's side for:

- keys for unit }
- see George } not even everyday
- no need to
- job - flat rate → no work no $

Talk of needed, pleasant conversations — she would
ask w/e plans

- invite to parties — never took Russ — no
romantic interest in her

No teasing

Nvr

Go out of my way to say "hi"

Nvr complained to Russell

Heard she was having problems

Went out on an ambulance — fainting spell (medical problem)

No nasty jokes — not racial/ethnic
Nvr saw her get upset
Seemed to punch out early occasionally

F. Roberts:

Watch out for that girl — she's single and got the
hots for you... — as passing by

Comments: her and boyfriend: personal remarks

— Pictures in bathtub

— Complaining about boyfriend not reciprocating oral sex

Russell — didn't go out of his way to talk to her

Fran/Wayne Danko — 15 yrs — Sales 25 yrs

Did not know beforehand

caught on wall — moody later on — emotional — crying — criticism
get her upset

= temper tantrums

— have to be at desk when "up"

— hug complaints — exact hugs: taking lunches; dress critique
did dress provocatively at first
— have to go by desk a lot

Talked a lot — rambled — young for position
= not hit on
= not upset by things

- needed it alot sex
- byfriend good in bed — thats why I like him

- She complained that byfriend would not go down on her

- got sick alot after work there a while — not sure why —

- might remark on appearances of women

- no sex talk though

- Nvr noticed Russ "stalking"

- Sean came in chit-chatting — seemed innocent to Wayne
   - mentioned that she felt uncomfortable — she didn't like him
   - ER complained to GL about it (Sean) Wayne was there at time — thats how he heard about gas station story

Didn't know her that well — ER told me gotting sometime

"Fuck this" (JB) I am going to find another job.

   - not turned on by her (Josh v Wayne)



- arguments w/ boyfriend
- rough spots - flirty
- calls dream after hours
- lack of sq — lack of time

No "just business" attitude

Moody — overly sensitive — easily offended — would
point it out/it was big problem

- gripes over nothing
- GL

— Vanessa — finds GL responsive / no problem w/ George

— heard some comments — "cut, nothing overt"

Ember — talked w/ T about biglio, sure he didn't
called a bitch and GL agreed with it said bitch
different from bitch not you are whore S

Apgard when they called Krees every 40 while w/
ER (as joke b/c she distilled rev)

No contract w/ ER since she left b/c TA told
her she was not doing the right thing

Belly button ring → show it to ATrust (all the time)

Pictures in bathtub – bubbles – not some of sys saw it

7/23/03  I-view w/ Debbie Day | Sales May 5/03
                                (Sales for 8 yrs before

did not learn ER beforehand
– intrigued law Foy 100.
Ih reported 40 btn rev ? 6L

Great at beginning – stuwted to change – eligible
for health Ins.
–60 days + 40 into per wd
– medical problems

Absent a lot – mj, synr respiratory, ovarian cysts B



- very important → Write up

- No racial/ethnic issues She is mature af

- No problems w/ me & Debbie
  → ??? it bogus (write up

- Talked to Deb about medical problems — branson)
  CJSTB

- Cast had tape but erased it.

- ??? — EA

→ laugh and joke

- wanted do to favor of Snap, below;
- emotional on matters b/day/anniversary

- Thought relationship nice fine up to end

Write-up

Nice, well-liked, personable ... friendly

Friendly, working relationship

Talked on phone outside work

- not get-together

- not socializing outside work

- ER calling ED - AD most of the time

Complaints:  Dpod w/ CG failed to her

- told Debbie about it - 2 weeks before ED left

Afterward she seemed unhappy w/ job

Sensitive b/c age ??

Emotional at pass's anniversary of F's unhm
seemed stable



No complaints about Clark, Debbie or Debbie

First heard of lawsuit - Coach - it was mentioned - Ember - have not spoke myself and still has that I wouldn't because: - don't agree with lawsuit

Last 2 weeks - unhappy - I'm to go to school if financially possible - have never spoken for 10 days or so.

Mentioned yest about writing

Sales staff some times made mention of hypertension official

← She and Theresa said that a cust was hurt
← called (wrote about beyond problems)

daily bottom line - not shown

# Exhibit 4

AO 88 (      ) Subpoena in a Civil Case

# United States District Court

### DISTRICT OF _Massachusetts_

_Ember Russell_
V.

_Longview Recreational Vehicles, Inc. et al._

TO: _Timothy Murphy_

## SUBPOENA IN A CIVIL CASE

CASE NUMBER: _04-CV-30031-KPN_

A TRUE COPY ATTEST: _1/31/05_

DEPUTY SHERIFF HND. CTY.

☐ **YOU ARE COMMANDED** to appear in the United States District Court at the place, date, and time specified below to testify in the above case.

| PLACE OF TESTIMONY | COURTROOM |
|---|---|
|  | DATE AND TIME |

☒ **YOU ARE COMMANDED** to appear at the place, date, and time specified below to testify at the taking of a deposition in the above case.

| PLACE OF DEPOSITION _Heisler Feldman + McCormick PC 1145 Main ST, Ste 508_ | DATE AND TIME _February 25, 2005 / 10 a.m._ |
|---|---|

☐ **YOU ARE COMMANDED** to produce and permit inspection and copying of the following documents or objects at the place, date, and time specified below (list documents or objects):

| PLACE | DATE AND TIME |
|---|---|

☐ **YOU ARE COMMANDED** to permit inspection of the following premises at the date and time specified below.

| PREMISES | DATE AND TIME |
|---|---|

Any organization not a party to this suit that is subpoenaed for the taking of a deposition shall designate one or more officers, directors, or managing agents, or other persons who consent to testify on its behalf, and may set forth, for each person designated, the matters on which the person will testify. Federal Rules of Civil Procedure, 30(b) (6).

| ISSUING OFFICER SIGNATURE AND TITLE (INDICATE IF ATTORNEY FOR PLAINTIFF OR DEFENDANT) _Atty for Plaintiff_ | DATE _1/28/2005_ |
|---|---|

ISSUING OFFICER'S NAME, ADDRESS AND PHONE NUMBER
_Suzanne Garrow   Heisler Feldman + McCormick PC   1145 Main ST, 508   413-788-7988_

UNITED STATES DISTRICT COURT
DISTRICT OF MASSACHUSETTS

|  |  |  |
|---|---|---|
| EMBER RUSSELL, | : | |
| Plaintiff, | : | |
| v. | : | CIVIL ACTION NO.  04-30031-KPN |
| LONG VIEW RECREATIONAL VEHICLES, INC. AND LONG VIEW RV SUPERSTORES, | : | |
| Defendant. | : | |

## RE  NOTICE OF DEPOSITION OF TIMOTHY MURPHY

TO:    Timothy Murphy
       Skoler Abbott & Presser.
       One Monarch Place
       Springfield, Massachusetts 01144


Please take notice that commencing at **10 a.m. on Friday February 25, 2005 at**

**the offices of Heisler, Feldman & McCormick, 1145 Main Street, Suite 508,**

**Springfield, Massachusetts**, the plaintiff by her attorney, will take deposition upon oral

examination of **Timothy Murphy** pursuant to the applicable Federal Rules of Civil

Procedure before a notary public or before some other officer authorized by law to

administer oaths.  The examination will continue day to day until completed.


Dated: January 28, 2005

EMBER RUSSELL
By her attorney,

Suzanne Garrow
BBO # 636548
Heisler, Feldman & McCormick
1145 Main Street, Suite 508
Springfield MA  01103
(413)788-7988
(413)788-7996 (fax)

## CERTIFICATE OF SERVICE

I hereby certify that a true and accurate copy of the foregoing document was served by the Sheriff in hand on Timothy Murphy, Esq. on January 28, 2005.

Suzanne Garrow

2

111058

**HAMPDEN COUNTY SHERIFF'S, INC.**
1170 MAIN STREET P.O. BOX 5005
SPRINGFIELD, MA 01101-5005
(413) 732-5772

111058

1/28/2005

BANK OF WESTERN
MASSACHUSETTS
SPRINGFIELD, MASSACHUSETTS
53-248/118

PAY TO THE
ORDER OF    TIMOTHY MURPHY

$ *$41.00*

***Forty One and 00/100***                           DOLLARS

TIMOTHY MURPHY
SKOLER ABBOTT & PRESSER
ONE MONARCH Place
SPRINGFIELD, MA 01103

MEMO:    05003551          Witness Fee

Kathleen A. Amise

⑆111058⑆ ⑆011802488⑆ ⑆0100101694⑆

# Exhibit 5

UNITED STATES DISTRICT COURT
DISTRICT OF MASSACHUSETTS

FEB 22 2005

|  |  |
|---|---|
| EMBER RUSSELL, | : |
| Plaintiff, | : |
| v. | : CIVIL ACTION NO.  04-30031-KPN |
| LONG VIEW RECREATIONAL VEHICLES, INC. AND LONG VIEW RV SUPERSTORES, Defendant. | : |

## <u>RENOTICE OF DEPOSITION OF TIMOTHY MURPHY</u>

TO:    Timothy Murphy
       Skoler Abbott & Presser.
       One Monarch Place
       Springfield, Massachusetts 01144

Please take notice that commencing at **1 p.m. on Friday February 25, 2005 at**

**the offices of Heisler, Feldman & McCormick, 1145 Main Street, Suite 508,**

**Springfield, Massachusetts**, the plaintiff by her attorney, will take deposition upon oral

examination of **Timothy Murphy** pursuant to the applicable Federal Rules of Civil

Procedure before a notary public or before some other officer authorized by law to

administer oaths.  The examination will continue day to day until completed.

Dated: February 18, 2005

1

EMBER RUSSELL
By her attorney,


Suzanne Garrow
BBO # 636548
Heisler, Feldman & McCormick
1145 Main Street, Suite 508
Springfield MA  01103
(413)788-7988
(413)788-7996 (fax)

## CERTIFICATE OF SERVICE

I hereby certify that a true and accurate copy of the foregoing document was served by mail on Timothy Murphy, Esq. on February 18, 2005.


Suzanne Garrow

2

# Exhibit 6

UNITED STATES DISTRICT COURT
DISTRICT OF MASSACHUSETTS

FEB 2 3 2005

EMBER RUSSELL,

          Plaintiff,

v.                                              : CIVIL ACTION NO.  04-30031-KPN

LONG VIEW RECREATIONAL
VEHICLES, INC. AND LONG VIEW
RV SUPERSTORES,
          Defendant.

## NOTICE OF DEPOSITION OF DENISE CHARTIER

TO:    Timothy Murphy
        Skoler Abbott & Presser.
        One Monarch Place
        Springfield, Massachusetts 01144

Please take notice that commencing at **3:45 p.m. on Monday February 28,**

**2005 at the offices of Heisler, Feldman & McCormick, 1145 Main Street, Suite 508,**

**Springfield, Massachusetts**, the plaintiff by her attorney, will take deposition upon oral

examination of **Denise Chartier** pursuant to the applicable Federal Rules of Civil

Procedure before a notary public or before some other officer authorized by law to

administer oaths.  The examination will continue day to day until completed.


Dated: February 18, 2005

1

EMBER RUSSELL
By her attorney,


Suzanne Garrow
BBO # 636548
Heisler, Feldman & McCormick
1145 Main Street, Suite 508
Springfield MA 01103
(413)788-7988
(413)788-7996 (fax)

## CERTIFICATE OF SERVICE

I hereby certify that a true and accurate copy of the foregoing document was mailed via first class mail upon the attorney of record for the defendants on February 18, 2005.


Suzanne Garrow

2